Martin CORDELL, Appellee,

v.

CODINGTON COUNTY, a Political
Subdivision of the State of South
Dakota, Appellant.

No. 18644.

Supreme Court of South Dakota.

Considered on Briefs Oct. 20, 1994.

Decided Dec. 28, 1994.

William E. Coester, Milbank, for appellee.

Roger W. Ellyson, Jr., Codington County
State's Atty., Watertown, for appellant.

WUEST, Justice.

Codington County appeals the circuit court's denial of a building permit issued by the County to ATY Feeder Pigs, Inc. (ATY) allowing ATY to expand its feeder pig operation in rural Codington County. We affirm the circuit court.

### FACTS

ATY Feeder Pigs, Inc. (ATY) is a corporation owned by six farmers for the express purpose of providing a hog production operation for themselves in rural Codington County. ATY has been in operation since 1975 raising pigs from farrowing to 40-lb. feeder pigs at which time the pigs are distributed back to the six individual farmers and the surplus pigs sold to Pig Improvement Corporation (PIC), a Wisconsin corporation. PIC "finishes" the pigs to approximately 220 lbs., or market weight. The farrow-to-feeder operation requires nine to twelve weeks while a farrow-to-finish operation requires five and one-half to six months. In 1982, ATY constructed a lagoon sewer system on its site and extensively remodeled existing structures to improve them. ATY did not obtain a permit for this construction.

In 1992, ATY applied for a building permit to expand its operation from a farrow-to-feeder operation to a farrow-to-finish operation. This permit was required under § 8.1 of the Codington County Zoning Ordinances. Cost of ATY's expansion, which involved construction of a new building, was estimated at $350,000. Martin Cordell, the plaintiff in this action, lives within 55 rods from the intended expansion and objected to the issuance of this building permit due to the smell of pig manure which he believed was certain to increase with the planned expansion. Cordell's residence has been at this location since 1975. ATY's application was originally denied by the Codington County Zoning Officer. ATY appealed this decision to the Codington County Board of Adjustment where its application was again denied. Finally, ATY appealed to the Codington County Board of Commissioners who issued the permit in October 1992 allowing ATY to proceed with its expansion plans.

ATY began construction and Cordell appealed to the circuit court. The circuit court found that ATY's expanded operation was a commercial feedlot according to Codington County Zoning Ordinances and, as such, could not be located anywhere within 80 rods of an established residence. The circuit court remanded the case to the Commissioners to vacate the building permit *ab initio*. County appeals the circuit court's decision claiming ATY is not a commercial feedlot and, in the alternative, ATY is entitled to a special exception or variance under the applicable zoning ordinances.

### STANDARDS OF REVIEW

■ We note first our standards of review in this case. We review a trial court's findings of fact under a clearly erroneous standard. In applying this standard, we have stated "we will not disturb the court's findings 'unless they are clearly erroneous and we are, after a review of all the evidence, left with a definite and firm conviction that a mistake has been made.'" *In re E.D.J.*, 499 N.W.2d 130, 134 (S.D.1993). If the record contains evidence to support the trial court's decision, we will not disturb a trial court's finding of fact on appeal. SDCL 15-6-52(a); *McLaughlin Electric Supply v. American Empire Ins.*, 269 N.W.2d 766, 769 (S.D.1978). All conflicts in the evidence must be resolved in favor of the trial court's findings. *Kost v. Kost*, 515 N.W.2d 209, 213 (S.D.1994); *In re Walter A. Gibbs*, 490 N.W.2d 504, 507 (S.D. 1992).

■ We review a trial court's conclusions of law under a de novo standard. *State v. Harris*, 494 N.W.2d 619, 622 (S.D.1993) (citing *Rusch v. Kauker*, 479 N.W.2d 496, 499 (S.D.1991)). Under this standard of review, "conclusions of law 'are given no deference by this court on appeal.'" *Rusch*, 479 N.W.2d at 499; *Harding County v. South Dakota State Land Users Ass'n*, 486 N.W.2d 263, 264 (S.D.1992); *Beville v. Univ. of S.D. Bd. of Regents*, 420 N.W.2d 9, 11 (S.D.1988).

### ANALYSIS AND CONCLUSION

■ Codington County first challenges the trial court's finding of fact no. 7, which states "ATY Feeder Pigs, Inc., is a commercial

venture involving the assemblage of hogs for the express purpose of preparation for market." Upon review of the evidence presented before the trial court, we are not firmly and definitely convinced the court was mistaken in its finding. ATY's articles of incorporation defines its purpose as the business of operating a feeder pig producing unit. ATY is operated by six farmers who combine and place their 480 sows onsite to raise these pigs from birth to 40 pounds, and now with the expansion plans, to 220 pounds when they are taken to market by the individual farmers. ATY contracts for the management of its operation with PIC and an employee of PIC resides with his family on ATY's premises for purposes of managing the hog production operation. ATY also sells pigs to PIC. The evidence supports the trial court's finding of fact no. 7 and, therefore, we will not disturb it on appeal. That Codington County argues only half of the pigs remain onsite after reaching 40 pounds does not change our holding in this regard.

Codington County next challenges the following conclusions of law by the trial court which we review de novo on appeal: 1) ATY is a commercial feedlot as defined by Codington County zoning regulations; 2) ATY is not entitled to a special exception under § 4.1B(8) of the zoning regulations; 3) ATY is not entitled to a variance under § 9.2D of the zoning regulations; and therefore, 4) ATY is not entitled to a building permit. We will address these challenges seriatim.

Zoning regulations are generally interpreted according to the rules of statutory construction and they may also be subject to rules of construction included in the regulations themselves. 83 Am.Jur.2d *Zoning and Planning* § 698 (1992). Here, the Codington County zoning regulations provide at § 2 that "certain terms and words are herein defined as follows [in the list of definitions], except where the context would plainly indicate a different intent[.]" One of the primary rules of statutory construction is to give words and phrases their plain meaning and effect. *In re Petition of Famous Brands, Inc.*, 347 N.W.2d 882, 885 (S.D.1984) (citing *Bd. of Regents v. Carter*, 89 S.D. 40, 46, 228 N.W.2d 621, 625 (1975)). We have

held that where the statutory language is "clear, certain and unambiguous, there is no need of statutory construction and the only function of the court is to declare the meaning of the statute as expressed." *Sioux Falls Sch. Dist. v. South Dakota Subsequent Injury Fund*, 504 N.W.2d 107, 110 (S.D.1993) (citing *In re Appeal of AT & T Info. Sys.*, 405 N.W.2d 24, 27 (S.D.1987); *In re Petition of Famous Brands, Inc.*, 347 N.W.2d at 885.)

■ The definition of a commercial feedlot is provided by the Codington County Zoning Regulations at § 2:

*Feedlot, Commercial.* A commercial venture under corporate or individual ownership involving the assemblage of livestock for the express purpose of preparation for market, and may be typified by rapid turnover of livestock, or the absence of dwelling unit, or without the association with other uses normally occurring on a farm.

This definition comports with the trial court's finding of fact no. 7, which we have already affirmed under a clearly erroneous standard of review. The meaning of terms in a zoning regulation is a question of statutory interpretation which is a matter of law for the court. 83 Am.Jur.2d *Zoning and Planning* § 698 (1992); *Vellinga v. Vellinga*, 442 N.W.2d 472, 473 (S.D.1989); *Harris*, 494 N.W.2d at 622. Codington County argues that ATY is an agricultural and not a commercial operation. We do not find these terms to be mutually exclusive.

■ Black's Law Dictionary defines commercial activity as including "any type of business or activity which is carried on for a profit." Black's Law Dictionary 270 (6th ed. 1990); *Lanski v. Montealegre*, 361 Mich. 44, 104 N.W.2d 772, 774 (1960) (citing *City of Sioux Falls v. Cleveland*, 75 S.D. 548, 553, 70 N.W.2d 62, 64 (1955)). Corpus Juris Secundum defines commercial venture as "[w]henever capital is to be laid out on any work and a risk run of profit or loss." 15A C.J.S. *Commercial* 3 (1967). Finally, we note the term "commercial" as used within zoning law denotes a use for profit. *Kaiser v. Western R/C Flyers, Inc.*, 239 Neb. 624, 477 N.W.2d 557, 561 (1991); *Imbergamo v. Barclay*, 77 Misc.2d 188, 352 N.Y.S.2d 337, 341 (N.Y.Sup. 1973). We affirm the trial court's conclusion

that ATY is a commercial feedlot under the definition provided by Codington County's zoning regulations. The County, in its brief to this court, states ATY, in its expanded state, is incorporated by six farmers to manage their pigs from farrowing to finishing in preparation for market. ATY's articles of incorporation state its purpose is the business of feeder pig production. We can only assume the purpose of combining this operation for the six farmers is to decrease expenses and turn a profit. We further note the operation is not associated with any other uses normally occurring on a farm.

■　County's next argument is that the zoning ordinances grant an exception for locating commercial feedlots under § 4.1B(8) and ATY's permit should be granted under this exception. We have not been provided with a copy of this particular ordinance but, according to quoted material in the parties' briefs to this court, the ordinance appears to permit special exception for:

> Commercial livestock feedlots, poultry, and fur farms, and dog kennels, which are not within one (1) mile of the City of Watertown and within eighty (80) rods of any established residence or within twenty (20) rods of federal, state, county or township highway.

According to the plain language of this ordinance, ATY is not in compliance and therefore is not entitled to an exception in its expansion plans. Cordell's established residence, since 1975, is within 55 rods of ATY's new construction. This situation was in existence when ATY applied for its building permit in 1992. The trial court found ATY was not entitled to an exception under this section because its new construction brought it within 80 rods of Cordell's property. We affirm the trial court in this regard.

■　County next argues ATY is entitled to a variance under § 9.2D of the zoning regulations. This section allows the Board to decide on applications for variances from the terms of the regulations based on undue hardship. In order to qualify for consideration under this section, all of the following conditions must be met:

1. Conditions and circumstances are peculiar to the land, structure, or build-ing and do not apply to neighboring lands, structures, or buildings in the same district.

2. Strict application of the provisions of this Regulation would not deprive the applicant of reasonable use of the land, structure or building equivalent to the use made of neighboring lands, structures or buildings in the same district and permitted under the terms of the Regulation.

3. The peculiar conditions and circumstances are not the result of actions of the applicant taken subsequent to the adoption of this Regulation [in 1974].

We do not find conditions or circumstances of ATY's proposed new construction expanding its business to include farrow to finishing operations to be so peculiar to the land, structure, or building as to comply with the first element required for a variance. Further, if it can be argued that construction of the new building by ATY is unique to the property, we find such a condition is made so due to ATY's actions and therefore the third element required for a variance is not met. Further, the second element required for a variance is not met in that strict application of Codington County's zoning regulations does not deprive ATY of reasonable use of its land, structure or building equivalent to neighboring uses. ATY has reasonable use of its land without expanding to a farrow-to-finish operation. None of the conditions required for granting a variance apply here.

We conclude, as a matter of law, in applying the plain language of the Codington County zoning ordinances to ATY's application for a building permit which would allow construction on its property to expand its "farrow-to-feeder" operation to a "farrow-to-finish" operation, that such an operation constitutes a commercial feedlot. We further conclude this commercial feedlot is not in compliance with the county ordinances prohibiting such an operation within 80 rods of an established residence and does not meet the requirements for a variance by the Board of Commissioners.

We affirm the trial court on all issues.

SABERS, AMUNDSON and KONENKAMP, JJ., concur.

MILLER, C.J., concurs specially.

MILLER, Chief Justice, concurring specially.

I am in full agreement with the majority opinion. I write specially to rhetorically ponder why the taxpayers of Codington County are financing an appeal, the subject of which appears to be solely for the benefit of ATY, a corporate hog producer.[1]

As noted by the majority, county's zoning officer and the board of adjustment denied ATY's request for a building permit to expand its commercial hog production facility. When the issue was subsequently presented to the county commissioners, they granted the building permit. The adversely affected adjoining landowner appealed to the circuit court, and the trial judge determined that issuance of the building permit would violate the county's own zoning ordinances.

The troublesome thing to me is what then followed. County, not ATY, appealed the circuit court ruling to this Court. The county's attorney (the state's attorney) filed all of the appeal documents and the appellate briefs.[2] Why was Codington County appealing? Where was ATY and its counsel?[3]

I appreciate that some confusion may have been caused by the inappropriate and unfortunate titling of the appeal before the circuit court as "Cordell v. Codington Court."[4] The appeal, which was taken pursuant to SDCL 7-8-27, should have been titled, "In the Matter of the Appeal of the Issuance of the Building Permit...." Nevertheless, erroneous titling of an action certainly does not change the status of the parties or their real interest in the subject litigation.

It was ATY, not Codington County, that was the interested party in this action and it, not the taxpayers, should be responsible for prosecuting and financing the appeal.

---

1. To a very minor degree, state taxpayers are likewise affected, since the filing fee to our Court is exempt because county is the named appellant. SDCL 16-2-29.1.

2. It is clear in the record before us that counsel for ATY appears to have had a minimal involvement, at best, in this appeal.

3. Cordell was troubled by the same questions. After the County initiated its appeal, Cordell filed a notice and application for preemptive writ of mandamus with the trial court. Included in the notice was a request that the County be required "to discontinue the illegal lending of the name of Codington County to ATY FEEDER PIGS, INC. for purposes of prosecuting an appeal against the Petitioner." Neither ATY nor the County responded to Cordell's claim that County was improperly involved in the appeal, and the trial court disposed of the application for a writ of mandamus on other grounds.

4. For some unexplained reason, ATY participated before the circuit court amicus curiae rather than being involved as a named or interested party. Again, perhaps this was occasioned by the inappropriate titling of the action.